W. K. NEAL, Administrator d. b. n. of C. M. Coffin, v. CAROLINA
CENTRAL RAILROAD CO.

(Decided May 22, 1900.)

*Negligence—Contributory Negligence—Demurrer—Nonsuit
—Act 1897, Chapter 109.*

Where the evidence on the part of the plaintiff (the defendant having
introduced none) is demurred to, and if true, establishes negligence
on the part of the plaintiff, and of the defendant, concurrent to the
last moment, a judgment as of nonsuit, sustaining the demurrer,
is proper.

CIVIL ACTION for damages for occasioning through negli-
gence, as alleged, the death of plaintiff's intestate, tried before
*Starbuck, J.,* at October Term, 1898, of the Superior Court
of MECKLENBURG County. The intestate was run over by
defendant's train and killed while walking along on the rail-
road track in Charlotte. The defendant denied negligence,

and pleaded contributory negligence. At the close of plaintiff's evidence, the defendant demurred to plaintiff's evidence, and moved for judgment of nonsuit, under Act of 1897, chap. 109. His Honor intimated that plaintiff was not entitled to recover, and plaintiff in deference to said intimation submitted to a nonsuit and appealed.

The evidence is stated in the opinion.

FURCHES, J., writes the opinion.

FAIRCLOTH, C. J., writes concurring opinion.

DOUGLAS, J., writes dissenting opinion.

CLARK, J., writes dissenting opinion.

*Messrs. Jones & Tillett,* and *Clarkson & Duls,* for appellant.

*Messrs. Burwell, Walker & Cansler,* for appellee.

FURCHES, J. This is an action to recover damages for the wrongful killing of Charles M. Coffin. The defendant does not deny the killing but denies that it was caused by its default or negligence, and alleges that it was the result of the negligence of plaintiff's intestate.

The evidence of plaintiff showed that intestate was killed by the shifting engine on defendant's road, in the city of Charlotte; that this engine was running backwards drawing a gondola car after it; that it was running at a high rate of speed in a westward direction, and intestate was walking on defendant's track, going in the same direction; that this train had come very near running over a team of mules at the street crossing, scaring the mules and making them unmanageable, and that the engineer and crew were watching the mules and laughing at the driver trying to manage them. The road was straight for 150 yards, and as the killing occurred in open daylight, the crew and engineer might have seen intes-

tate, and intestate have seen the train for that distance. The intestate was walking on the defendant's track when he was knocked down by defendant's train, run over and killed.

The plaintiff also offered in evidence an ordinance of the city forbidding trains to run at a greater speed than four miles an hour, while passing through the city, and requiring the bell to be rung. Plaintiff showed that this train was running at a high rate of speed, and greater than that allowed by the ordinance, and that no bell was being rung.

The plaintiff having offered evidence as to amount of damages, rested the case. Defendant offered no evidence, demurred to plaintiff's evidence, and moved to nonsuit plaintiff under chap. 109, Acts 1897.

After hearing argument of counsel and upon full consideration of the matter the Court allowed defendant's motion, and assigned the following reasons therefor:

"First, That the evidence if believed, showed the defendant guilty of negligence.

"Second, That the evidence being that offered by the plaintiff, and without contradiction, must, as to the plaintiff, be believed, and if believed it showed, and the conclusion could not be reasonably avoided, that the plaintiff's intestate by his own negligence contributed to cause the injury.

"Third, That while it might be found that notwithstanding the negligence of plaintiff's intestate, the defendant might, by ordinary care, have avoided the injury, the evidence, which as to the plaintiff, must be believed, clearly showed that notwithstanding defendant's negligence, the plaintiff's intestate by the exercise of ordinary care, might himself, up to the last moment, have avoided the injury. Therefore the negligence of plaintiff's intestate, if not the proximate cause, at least concurred with defendant's negligence, up to the last moment, in together constituting the proximate cause of the injury.

The third issue therefore should be answered no, and the plaintiff is not entitled to recover in the action. In deference to this intimation, the plaintiff having excepted, submitted to a nonsuit, and judgment was entered accordingly."

The plaintiff assigned the following grounds of error:

"1. That the Court added at the end of the third issue tendered, the clause, 'And if so, was defendant's failure to avoid the injury the proximate cause thereof.'

"2. The plaintiff assigns as error the rulings of his Honor sustaining the demurrer and dismissing the action.

"3. That the Court in and by its said judgment dismissed the action."

The evidence was all introduced by the plaintiff—the defendant introduced none, and there is no exception as to the competency of any of the evidence.

The Court finds from this evidence that the defendant was guilty of negligence; and while we think from the evidence, taken to be true, that it was guilty of negligence—as this negligence was shown by the evidence of the plaintiff—the Court could not have found this issue against the defendant, if it had complained of and excepted to it, and brought it before us for review. It was the finding of an affirmative issue against the defendant upon the evidence of the plaintiff. *Spruill v. Insurance Co.*, 120 N. C., 141; *Bank v. School Commissioners*, 121 N. C., 109; *White v. Railroad, Ibid*, 484. But this ruling is not before us for review. The defendant neither excepted nor appealed, and the plaintiff can not except to this finding because it is in his favor.

And it seems to us that there can be no doubt but what the intestate of the plaintiff was also guilty of negligence, if the evidence be true and every word of it believed. This issue is then not one that must be found by a jury, but one that may be found by the Court. It does not present a question where

reasonable men might put different constructions upon it, and come to the conclusion that the plaintiff's intestate was not guilty of negligence.

If plaintiff's intestate was walking upon defendant's road in open daylight, on a straight piece of road, where he could have seen defendant's train for 150 yards, and was run over and injured, he was guilty of negligence. And although the defendant may have also been guilty of negligence in running its train at a greater rate of speed than was allowed by the town ordinance, or in not ringing its bell as required by said ordinance, and in not keeping a lookout by its engineer as it should have done, yet the injury would be attributed to the negligence of the plaintiff's intestate. It has been so held in *Meredith v. Railroad,* 108 N. C., 616; *Norwood v. Railroad,* 111 N. C., 236; *High v. Railroad,* 112 N. C., 385. These cases hold that it is not negligence in a railroad company where its train runs over a man, walking on the railroad track, apparently in possession of his faculties, and in the absence of any reason to suppose that he was not. This is put upon the ground that the engineer may reasonably suppose that the man will step off in time to prevent injury. In *McAdoo v. Railroad,* 105 N. C., 140, this doctrine is expressly held; and it is further held in that case that, on account of plaintiff's negligence in standing on the road and allowing defendant's train to run over him, that this was concurring negligence, and prevented him from recovering damages. *McAdoo v. Railroad* has been cited and approved on this point in *Syme v. Railroad,* 113 N. C., 565, and in *Smith v. Railroad,* 114 N. C., 744, and many other cases.

We know that it has been held in many cases that a railroad company is liable for damages for carelessly and negligently running over and killing or injuring persons on its road, in which it appeared that the persons killed or injured

were also guilty of negligence; and it may not be easy to distinguish some of these from the one under consideration. But there is a distinction, and a distinct line of decisions, as we have shown by the cases we have cited.

The distinction does not seem to lie so much in the negligence of the parties, where both are guilty of negligence, as it does in the condition of the parties. And we think upon examination that it will be found that where the company has been held liable, it is in cases where the party injured was not upon equal opportunities with the defendant to avoid the injury, and in cases where there was something suggesting to the defendant the injured party's disadvantage or disability—as where the party injured is lying on the railroad track apparently drunk, or asleep, or on a bridge or trestle where he could not escape or could not do so without great danger. In such cases, if the engineer saw the party injured, or by proper diligence should have seen him, the company is liable. It is in such cases as these that the doctrine of proximate cause, or the "last clear chance," is called in to determine the liability.

The doctrine of proximate cause—the "last clear chance"—is firmly established in this State, and we have no idea of abandoning or in any way disturbing it. We think the line of cases where it applies are distinct, and distinguishable from this case whether we have succeeded in pointing out the distinction or not. Indeed, we do not understand the plaintiff to make this the principal ground upon which he rests his appeal and insists upon a new trial. Nor do we understand the plaintiff seriously to insist but what there is evidence tending to prove—if not to prove—that the plaintiff's intestate was guilty of negligence.

But it is contended that if the intestate was guilty of negligence, the defendant being also guilty of negligence, the intes-

tate's negligence was what is termed contributory negligence, and that contributory negligence is an *affirmative issue* and can not be found by the Court. To sustain this position, a number of recent cases have been cited, among them *Spruill v. Insurance Co.,* and *Bank v. School Commissioners, supra.* In these cases, and quite a number of others, it was held that the Court could not find an affirmative issue. This holding was entirely correct in those cases and in every other case where it has been held, so far as we remember. We do not wish to overrule or disturb this doctrine, as held in those cases; but to our minds this case is clearly distinguishable from them, as we hope to be able to show.

In those cases, and in all others, as we think, where this has been held, there was some doubtful or disputed fact to be found, dependent upon the weight or the credit of the evidence. In such cases the Court can not find the facts, nor even intimate an opinion, without violating the statute of 1796 (Code, sec. 413). And if the Court has done so in this case, the plaintiff is entitled to a new trial.

But the function of the jury is to find the facts—this must mean disputed facts—and must be exercised where there is evidence proving or tending to prove the facts disputed. If there is not, it is the duty of the Court to say so, and withdraw this dispute—this issue—from the jury. This was conceded by the plaintiff, it being a negative finding of the issue. But the plaintiff contends that to find the intestate guilty of negligence was an affirmative finding, and one the Court could not find. This is logically and legally true if the Court *had* to find any disputed fact, where there was any evidence showing or tending to show the negative of the issue, or if it was necessary that he should pass upon the weight or credit of the evidence. Where this is the case, the usual rule is to submit the issue to the jury, with the instruction that, if they

believe the evidence, they will find the issue yes or no as the case may be. This is usually a good rule, and in many cases saves an appeal to this Court. But the Court could not do that in this case without impeaching the plaintiff's witnesses. All the evidence was offered by the plaintiff and the defendant had demurred to it. This was an admission by the defendant that the evidence was true. The plaintiff by offering the evidence had vouched for its credit. He could not impeach its credit. As to the plaintiff, it stood unimpeached and unimpeachable. It is true that if the plaintiff offered other evidence tending to show the facts different, then it would have become a matter for the jury as to which witness they would believe. But both witnesses stand alike credited so far as the plaintiff or the party introducing them is concerned. If this evidence, or any part of it, had been introduced by the defendant, it would have been the duty of the Court to submit it to the jury, because, the plaintiff would not have been bound to give credit to the defendant's witnesses, and the defendant could not give them credit by demurring to their evidence.

But when the defendant demurred to the plaintiff's evidence, and but one construction can reasonably be drawn from it, that is, it could not reasonably mean different things, we can not see why it did not become a question of law, as much so as if the facts stated in the evidence had been agreed to as the facts in the case. And if this is so, it certainly became a question of law for the Court.

This view of the case is sustained by *Williams v. Telephone Co.*, 116 N. C., 558; *Hinshaw v. Railroad*, 118 N. C., 1047; *Ice Co. v. Railroad*, 122 N. C., 881; *White v. Railroad*, 121 N. C., 484, and we do not think it will be found to conflict with any opinion of this Court. A number of cases.

41——126

NEAL *v.* RAILROAD CO.

may be found (some of which we have cited) in which it is said that the Court can not find an affirmative issue; and this is true in those cases, and in all cases where the Court would have to *find the facts* to establish an affirmative issue. But in this case, the Court *finds no facts*. They are admitted by the demurrer of the defendant to the plaintiff's testimony. This being so, and the plaintiff's evidence clearly establishing the intestate's negligence, which was the *concurrent cause of the injury,* the plaintiff can not recover, without overruling the authorities we have cited, and many others not cited.

The doctrine of proximate cause and "the last clear chance" is not involved in this case. It falls under the doctrine announced in *McAdoo v. Railroad, supra,* and that line of cases.

Taking the view of the case we do, the judgment of the Court below must be

Affirmed.

FAIRCLOTH, C. J., concurring. When the plaintiff closed his evidence defendant moved that plaintiff be nonsuited for the reason that upon his own evidence he was not entitled to recover. His Honor was of opinion that the evidence, if believed, showed the defendant guilty of negligence, that the evidence being that of the plaintiff and without contradiction, must, as to the plaintiff, be believed, and if believed, it showed that plaintiff's intestate, by his own negligence, contributed to cause the injury.

The intestate was walking on the track of the defendant company when he was struck by the defendant's shifting engine and killed. At the time he was struck the intestate was walking along the track in full possession of his senses, and in a place where he had a full view of the approaching engine for a long distance. The track was perfectly straight from the place where the intestate was struck by the engine to

the crossing of the Southern Railway Company, a distance of two blocks and two hundred and twenty-five feet, or a thousand feet in round numbers, and there was no obstruction whatever to his view. There was a path running alongside of the track where plaintiff was walking at the time the engine struck him.

Plaintiff's witness, Sophia Lee, testified that she saw the train and heard it coming, and that plaintiff's intestate was between her and the train, walking right along the track on a clear day.

Upon this evidence it appears to me that, assuming the defendant to have been negligent, the causation of the injury was the *concurrent* negligence of both parties, and it has often been held that in that event neither party can recover.

In *McAdoo v. Railroad,* 105 N. C., 140, a case quite like the present, the Court held that "the plaintiff could not recover if the engineer and fireman, without actual knowledge of or acquaintance with him, had acted, as they did, on the assumption that intestate would get out of the way." "There was no error in the instruction predicated upon the supposition that they failed to ring the bell. According to the plaintiff's own testimony, he stood upon the track with his back towards the engine and did not see it till after he was stricken by it. He was therefore, in any aspect of the case, negligent, and the jury would not have been warranted in any finding that the defendant could have prevented the injury by using ordinary care." The Court further says that it could make no difference at what rate of speed the engine was running at the time. "All this might possibly have been more clearly presented, if there had been a third issue, and his Honor had said there was no testimony to support an affirmative finding on it." The principles stated and applied

in McAdoo's case have since been repeatedly affirmed by this Court, and expressed in emphatic language.

In *Meredith v. Railroad,* 108 N. C., 616, the Court said: "We concur with the Judge below in the opinion that the plaintiff was not entitled to recover, because by the undisputed facts considered in any phase presented by them, the plaintiff was negligent in failing to see the train approaching him from behind, while the servant of the defendant was not in fault in acting on the belief that plaintiff would get out of the way of the engine before it would reach him."

In *Norwood v. Railroad,* 111 N. C., 236, this Court decides:

"If the engineer could, by proper watchfulness, have seen intestate standing or walking on the track, he would not have been negligent in acting on the assumption that intestate would step off in time to avert injury, and where the intestate was seen, or could, by proper care, have been seen by the engineer, sitting upright on the end of a crosstie, the latter was justified in believing that he would get out of danger, and his failure to leave the track, whether he was a trespasser or licensee, is considered by the law as the proximate cause of his death, unless it is shown that his condition or situation was such that he could not leave the track, and that this was known, or could by the exercise of proper care have been known, to the engineer."

In *High v. Railroad,* 112 N. C., 385, this Court decides:

"Where an engineer sees on the track, in front of the engine in which he is moving, a person walking or standing, whom he does not know at all, or who is known by him to be in full possession of his senses and faculties, the former is justified in assuming, up to the last moment, that the latter will step off the track in time to avoid injury, and, if such person is

injured, the law imputes it to his own negligence, and holds the railroad company blameless."

"The failure of the engineer to keep a proper lookout subjects the company to liability only in those cases where, if he had seen the situation of the injured party, it would have become his duty to pursue such a course of conduct as would have averted it. Whether he saw the plaintiff at a distance of 150 yards, or of 10 feet, he was not at fault in acting on the supposition that she would still get out of the way. It is not material whether the train was moving fast or slow in such a case as this."

"If the plaintiff had looked and listened for approaching trains, as a person using a track for a footway should, in the exercise of ordinary care, always do, she would have seen that the engine was moving towards her.

"The fact that it was a windy day and that she was wearing a bonnet, or that the train was late, gave her no greater privilege than she would otherwise have enjoyed as licensee, but, on the contrary, should have made her more watchful."

"There was nothing in the conduct or condition of the plaintiff that imposed upon the engineer, in determining what course he should pursue, the duty of departing from the usual rule, that the servant of a railroad company is warranted in expecting licensees or trespassers, apparently sound in mind and in body, and in possession of their senses, to leave the track till it is too late to prevent a collision."

In *Syme v. Railroad,* 113 N. C., 558, this Court decides:

"When a person is injured while walking on a railroad track by an engine that he might have seen by looking, the law imputes the injury to his own negligence. There being no testimony tending to bring this case within any exception to the general rule, we are of the opinion that there was no evidence of the want of ordinary care on the part of the

NEAL *v.* RAILROAD CO.

defendant, while, in any aspect of the case, the plaintiff's intestate was negligent in getting upon the track in front of the engine without looking, and in exposing his person to injury, when he might have seen that the engine was approaching and have avoided the collision by stepping off the track."

"On the other hand the engineer was justified in assuming that the intestate had looked and had notice of his approach, and would clear the track in ample time to save himself from harm."

Other cases might be cited of the same purport.

The defendant's motion was in effect a demurrer to the plaintiff's evidence, admitting every word to be true and every fact that can be gathered from it. I am unable to see what is left for the jury to pass upon. I understand that when facts are agreed upon, or found by a special verdict, or admitted by demurrer, nothing remains to be done, except for the Court to apply and fit the law to the facts. Here the proximate cause of the injury is plainly and manifestly the joint, *concurrent* in negligence of both parties, and there is no place found in these facts for what is called the last clear chance. When the facts are clearly settled, from which only one inference can be drawn, the question is then one of law, for the Court to decide, and in such case the Court should take the case from the jury and direct a nonsuit or verdict as the case may be. 1 Shearman & Redfield on Negligence 68, sec. 56; Cooley on Torts, 670. That the causes of the injury are concurrent seems plain according to these facts. Possibly *some sort* of logic might conclude differently, but that is not the common sense view to my mind, and when logic and common sense can not be reconciled, logic must give way.

. DOUGLAS, J., dissenting. It is with a feeling of deep regret and much hesitation that I am forced to enter my most earnest dissent from the opinion of the Court. I wish I could agree with the majority of the Court that its opinion does not conflict with our former rulings, but I ' am utterly unable to do so with those cases before me. That plain words may have a hidden legal meaning utterly at variance with the ordinary usage of the language, and which I did not intend them to have, and never dreamed they could have, when I used them, is beyond my comprehension. Feeling as I do, I would be untrue to myself were I to concur in an opinion which to my mind destroys the principle of our recent decisions, is in direct violation of the statute, and flatly contravenes the letter and the spirit of the Constitution.

The rule as now laid down, stripped of its incidents, is as follows: "That the Court may withdraw an issue from the jury and direct an affirmative finding of contributory negligence against the plaintiff, whenever it thinks that the evidence of the plaintiff's own witnesses is sufficient to prove the fact in controversy." That is all there is in it, dilute it as we may. It is true the Court says provided there is no conflict in the testimony, but such a want of conflict does not of itself prove the issue. There may be only one witness, or fifty witnesses, swearing to the same thing, and unless they swear to enough to prove the fact in issue, neither the Court nor the jury can find it to be true.

This line of reasoning forces me to the conclusion which this Court has recently so repeatedly and emphatically announced, but which it now seems, at least partially, to repudiate, that the Court can never direct an affirmative finding of fact. To do so, it would be necessary for the Court to pass directly upon the *weight* of the evidence, and to find that it was of sufficient weight to overcome the negative presump-

tion always arising from the burden of proof. In other words, it would be saying, in the teeth of the statute, that a fact which the law required to be proved had been "sufficiently proven." And yet Mr. Justice FURCHES, speaking for a unanimous Court in *Bank v. School Commissioners,* 121 N. C., 109, says that this can not be done, using the following words: "But no matter how *strong* and *uncontradicted* the evidence is in support of the issue, the Court can not withdraw such issue from the jury and direct an affirmative finding. To do this is to violate the Act of 1796—sec. 413, of The Code."

In *White v. Railroad,* 121 N. C., 484, 489, the same Justice, again speaking for a unanimous Court, says: "The Court can *never* find, nor direct an affirmative finding of the jury. The most the Court can do is to instruct the jury, where there is no conflict of evidence, that if they believe the evidence they should find yes or no, as the case may be."

In *Wood v. Bartholamew,* 122 N. C., 177, 186, Justice FURCHES, again speaking for a unanimous Court, says: "The burden of the issue of contributory negligence is on the defendant. It is an affirmative issue and can not be found by the *Court.* It must be determined by the jury."

Other opinions of the same learned Justice contain expressions to the same effect. The italics are my own. These emphatic expressions were neither casual nor *obiter,* but were used in the decision of questions directly raised and in answer to the strenuous contentions of counsel urged in repeated and elaborate arguments.

This Court at the last term, after most careful consideration, speaking without dissent through Mr. Justice MONTGOMERY, in *Crews v. Cantwell,* 125 N. C., 516, 519, after intimating that the burden was really on the defendant, uses the following language: "The instruction then of his Honor

was erroneous, for as the *burden of proof was assumed* by the plaintiff, the Court could not withdraw the issue from the jury. *Bank v. School Commissioners,* 121 N. C., 109. In that case, Justice Furches, delivering the opinion of the Court, said: *'But no matter how strong and uncontradictory the evidence is in support of the issue, the Court can not withdraw such issue from the jury and direct an affirmative finding.'"* It should be noted that in that case the Court based its judgment solely upon the fact that the plaintiff had *assumed the burden of proof,* and made no allusion whatever to the fact that the only evidence was that of the plaintiff.

Mr. Justice Clark has used similar language in speaking for the Court, and does not wish now either to modify or withdraw it.

Speaking for a unanimous Court, in *Sherrill v. Telegraph Co.,* 116 N. C., 655, he says, on page 657: "But when the plaintiff makes out a *prima facie* case, then to instruct the jury that the evidence rebuts it and overcomes it, is to invade the province of the jury and violates chap. 452, of the Acts of 1796 (Code, sec. 413), which forbids an expression of opinion by the Judge upon the weight of the evidence."

I may be pardoned for citing some of the opinions of the Court written by myself. They are in plain words, plainly setting forth the views I was known to possess and intended to express. Whatever other faults they may have, my opinions are neither the intangible mists of summer nor the shifting winds of March.

In *Spruill v. Insurance Co.,* 120 N. C., 141, during my first term upon the bench, it is said, for a unanimous Court: "Where there is no evidence, or a mere scintilla of evidence, or the evidence is not sufficient in a just and reasonable view of it to warrant an inference of any fact in issue, the Court should not leave the issue to be passed upon by the jury, but

should direct a verdict *against the party upon whom the burden of proof rests.* That the verdict should be directed *against* the party upon whom rests the burden of proof, is the *essence* of the rule. \* \* \* If the verdict of a jury is, in the opinion of the Court, against the weight of evidence, it can be set aside, and to the proper exercise of this discretion there can be no objection. But to permit the Judge to pass upon the *sufficiency* of the evidence necessary to rebut a legal presumption without submission to the jury, would infringe upon the exclusive powers of the jury. \* \* \* The rule laid down in some authorities that wherever the Judge would be justified in setting aside the verdict as against the weight of evidence, he would be equally justified in taking the case from the jury and directing a verdict, can not receive our sanction. It is not the law in North Carolina, and never can be under our present Constitution. 'The ancient mode of trial by jury,' guaranteed by the Constitution, is that at common law, and is none the less the right of the citizen than it was of the subject. Direction of a verdict and granting a new trial are essentially different in nature and effect. The one regulates the trial by jury, the other denies it; the one recommits the case to the jury, the other takes it away completely; the one merely reopens the case for a fairer trial, while the other ends it without redress, save the precarious method of appeal, where findings of fact can be reviewed only from the meager notes of the Judge, and the uncertain recollection of counsel. The mere fact that the Judge can never, save by waiver or consent, *render* a verdict, but can direct it only in the name of the jury, shows the intent and spirit of the law. These principles are 'fundamental,' and 'a frequent recurrence' thereto is of constitutional obligation." This case appears to have been cited in more than twenty different cases, including the opinion of the Court from which I am respectfully dissenting.

In *Cox v. Railroad,* 123 N. C., 604, this Court, in reviewing Spruill's case, says: "Had the question not been again presented by counsel, it would almost seem needless to repeat what we have so often said, that the burden of proving negligence rests upon the plaintiff, while the *onus* of showing contributory negligence rests upon the defendant. In both cases this must be shown by a greater weight of the evidence, and of this relative weight the jury alone can determine. A negative presumption necessarily accompanies the burden, and remains until the burden is lifted or shifted by direct admissions or a preponderance of proof. * * * Where there is evidence tending to prove negligence on the part of both parties, the case must *always* be submitted to the jury, and *it makes no difference if this evidence appears in the testimony of the plaintiff.* The Court may say to the jury that there is no evidence tending to prove a fact, but it can *never* say that a fact is proved. * * * It is the *settled rule* of this Court that a verdict can *never* be directed in favor of the party upon whom rests the burden of proof, who in all cases is considered to have the affirmative of the issue, whatever may be its form. Though this rule was discussed and reaffirmed in *Spruill v. Insurance Co.,* 120 N. C., 141, it did not have its origin in that case, but in *Wittkowsky v. Wasson,* 71 N. C., 451, where the doctrine was distinctly laid down in the following words, quoted from the opinion of Wells, J., in the Court of Exchequer Chamber: 'There is in every case a preliminary question which is one of law, viz: Whether there is any evidence on which the jury could properly find the question *for* the party on whom the *burden of proof lies.* If there is not, the Judge ought to withdraw the question from the jury and direct a *nonsuit* if the *onus* is on the plaintiff, or direct a *verdict* for the plaintiff if the *onus* is on the *defendant.'* In other words, the verdict must in either event be

directed *against* the party on whom lies the *onus,* and by nec-
essary implication can never be directed in his favor.    *    *
The burden of proving contributory negligence is always upon
the defendant.    Therefore a direction in his favor, based in
any degree upon the contributory negligence of the plaintiff,
would be a direction *in favor* of the party upon whom rested
the burden of proof, which is directly opposed to the uniform
current of our decisions.    If there had been any reasonable
doubt that the burden of proving contributory negligence
rested upon the defendant, it has been set at rest by chap. 33,
of the Laws of 1887.    *    *    *    It, therefore, follows that
on a motion for a nonsuit the Court *can consider only the
evidence relating to the negligence of the defendant,* and if
there is more than a scintilla tending to prove such negligence,
the motion must be denied and the case submitted to the
jury."    That case cites a large number of authorities which it
is needless now to recite.    Can there be any question as to
its meaning ?    There was a single dissent.

In *Bolden v. Railway,* 123 N. C., 614, this Court, with a
single dissent, says : "By force of statute, as well as a settled
rule of decision, the plea of contributory negligence is an
affirmative defense in which the burden, both of allegation
and proof, rests upon the defendant.    It is true that con-
tributory negligence may be shown by the evidence of the
plaintiff, but whether the *weight* of that evidence is sufficient
to overcome the presumption in his favor, arising from the
burden of proof, is a question for the jury.    The action of
the plaintiff in going upon the bridge was argued as con-
tributory negligence, but if it be viewed as an implied
assumption of risk, the same rule will apply.    Both doctrines
are alike as being in the nature of a plea of confession and
avoidance, inasmuch as they are affirmative defenses set up to
excuse the negligence of the defendant.    As such, the burden

of proof is in both cases upon the defendant, and an issue can be found in its favor *only by a jury.*"

In the subsequent case of *Cogdell v. Railroad,* 124 N. C., 302, it is said by a *unanimous* Court, that: "Contributory negligence and assumption of risk, being in the nature of pleas in confession and avoidance, are affirmative defences, and *can not be considered on a motion for nonsuit.*" Citing *Bolden v. Railroad, supra.* It is useless to further cite the large number of cases wherein this Court has said that the Court could *never* direct an affirmative finding. If it did not mean "never" when it said it in the above cases, I suppose it did not mean it in the others. I meant it then and mean it now.

The rule now adopted by the Court is an adaptation of the Federal rule; and while it may find a home with us by adoption, it is not to the manner born, and is the legitimate offspring neither of our Constitution nor of our laws. The Federal Courts, as well as those of some few of the States, still adhere to the English practice of allowing the Court to express an opinion upon the *weight* of the evidence, that is, the Court under this rule may in all cases say to the jury what it thinks ought to be their verdict. This practice, which may serve to explain some decisions in those tribunals where it still exists, has been repudiated by a large majority of the States, and was positively prohibited by statute in this State, as far back as 1796. This prohibition has been brought forward in successive compilations, and is still in force as sec. 413, of The Code, which reads as follows: "No Judge, in giving a charge to the petit jury, either in a civil or a criminal action, shall give an opinion whether a fact is fully or sufficiently proven, such matter being the true office and province of the jury; but he shall state in a plain and correct manner the evidence given in the case, and declare and explain

the law arising thereon." This distinct line of demarcation between the powers of the Judge and the jury, established in the childhood of our State, and remaining in full force for more than a hundred years, has become a fundamental part of "the law of the land."

I am aware that there are some cases tending to sustain the rule now adopted by the Court, but they were decided before I came upon the bench, and are in direct conflict with our later as well as our earlier decisions. The earliest case cited by the Court is that of *Meredith v. Railroad,* 108 N. C., 616, decided in 1891, which cites upon this point only the cases of McAdoo, Parker and Daily. In McAdoo's case, all the issues were submitted to the jury, and none found by the Court. In Daily's case, decided in 1890, while the Court below held that the plaintiff, who was an idiot, could not recover, on account of his contributory negligence, this Court held that there was no evidence tending to prove the negligence of the defendant. Parker's case was decided before the passage of the Act of 1887, chap. 33, which expressly provides "that in all actions to recover damages by reason of the negligence of the defendant where contributory negligence is relied upon as a defense, it shall be set up in the answer and proved on the trial." I am also aware that there have been two or three *dicta* to the same effect, but I do not feel bound by them. I am not responsible for all that may be said in an opinion from which I do not dissent, but only for such matters as are necessarily involved in the decision of the case.

*Dicta* are the overflows of judicial learning, and, like the freshets in our streams, are always dangerous and generally harmful. Occasionally they add fertility to the fair fields of jurisprudence. But more often they tend to cut gullies through well-established principles, or to create stagnant

pounds of doubt, whose mist and malaria are equally dangerous.

The tendency of Judges to invade the province of the jury is shown throughout the entire history of the law, and the survival of the system in full vigor as the foundation stone of Anglo-American jurisprudence, is in itself the strongest proof of its inherent merit. Courts of equity, from the first, refused to recognize the system, and we have recently seen to what extent a trial by jury can be evaded by proceedings in injunction, and in the nature of contempt. Courts of Admiralty, following the principles of the civil law, have also discarded the jury; and it is a significant fact that they also have refused to recognize the doctrine of contributory negligence, always apportioning the damages in proportion to the *comparative* negligence of the parties.

In view of this tendency, this Court has felt it its duty more than once to assert the independence of the jury. In *Cable v. Railroad,* 122 N. C., 892, 900, the Court says: "This Court does not favor the growing practice of taking cases from the jury. The jury is a constitutional body, as much so as the Court itself, and in the exercise of its peculiar powers of equal responsibility and independence."

In *State v. Shule,* 32 N. C., 153, the Court says: "We think there was error in the mode of conducting the trial. * * * There was a departure from the established mode of proceeding, and the wisest policy is to check innovation at once; particularly, as in this case, it concerns the 'trial by jury' which the 'bill of rights' declares 'ought to remain sacred and inviolable.' This innovation is that, instead of permitting the jury to give their verdict, the Court allows a verdict to be entered for them, such as it is to be presumed the Court thinks they ought to render, and then they are asked if any of them disagree to it? Thus making a verdict for

them, unless they are bold enough to stand out against a plain intimation of the opinion of the Court." The Court then proceeds to lay down the rule substantially as stated in *Spruill v. Insurance Co., supra.*

In *State v. Allen,* 48 N. C., 257, 262, Judge PEARSON, speaking for the Court, says: "It is our duty to see to it that the trial by jury shall remain 'sacred and inviolable,' and if upon the circuits there has grown up any practice encroaching upon the trial by jury as 'heretofore used,' although such practice may, to some extent, have been sanctioned by decisions of this Court, it is our duty to put a stop to it; and while we will not allow a jury to encroach upon the province of the Judge, i. e., to declare and explain the law and undertake, by an *abuse* of their power, to decide questions of law, on the other hand we are equally solicitous to see that the Court shall not commit usurpation upon *'the true office and province of the jury.'* Repetition of error can never justify the violation of a positive enactment of a statute, much less the infringement of a fundamental principle upon which our social existence is declared to rest. An error may have crept into our practice by reason of the Judges not having attached due importance to the distinction between the condition of things in England, whence we are in the habit of taking our notions of law, and the condition of things here, where the trial by jury is protected both by the Constitution and by legislative enactment. A Judge is not at liberty to express an opinion as to the sufficiency of the evidence. When there is a defect, or entire absence of evidence, it is his duty so to instruct the jury; but if there be any competent evidence, relevant and tending to prove the matter in issue, it is 'the true office and province of the jury' to pass upon it, although the evidence may be so slight that anyone will exclaim, 'certainly, no jury will find the fact upon such insufficient evidence.'

Still the Judge has no right to put his opinion in the way of the free action of the jury, even should he deem it necessary to do so, in order to prevent them from being misled by the arguments of counsel or their own want of apprehension. It is true, juries will sometimes find strange verdicts, acting under the influence of ignorance or of prejudice, but in general, juries are *honest,* and it is considered *safer for the lives and property of the people to submit to the inconvenience of particular cases of this kind than in anywise to allow the Judge to encroach upon 'the true office and province of the jury.'* This partial evil is in a great measure obviated by allowing the Judge to grant a new trial in all cases (except where a party is acquitted upon a criminal charge) whenever he thinks the jury have found against the weight of the evidence."

I have no apology to make for quoting so much of this opinion. It is a great opinion, of a great Judge, fully equal in importance to that of *Hoke v. Henderson,* about which we have recently heard so much. I have given to the latter opinion the deliberate assent of my judgment and my conscience, and have carried it to its fullest legitimate extent. In doing so I have nothing to retract, but I feel equally bound by the underlying principles of *State v. Allen.* Are the constitutional rights of the officeholder any more sacred than the constitutional guarantees of the citizen? I think not. I understand the opinion of the Court to admit that there is sufficient evidence tending to prove the negligence of the defendant, and to base its judgment purely upon the contributory negligence of the plaintiff, which it presumes to have been shown beyond the possibility of a reasonable doubt.

It should be borne in mind that much of the evidence upon which the Court apparently relies as showing contributory

negligence, was brought out by the defendant on cross-examination.

That driving a train at a greater rate of speed than that allowed by law is at least evidence of negligence, is well settled.   In *Railway v. Ives,* 144 U. S., the Court says, on page 418:   "Indeed it has been held in many cases that the running of railroad trains, within the limits of a city at a rate of speed greater than is allowed by an ordinance of such city, is negligence *per se* (citing authorities).   But perhaps the better and more generally accepted rule is that such an act on the part of the railroad company is always to be considered by the jury as at least a circumstance from which negligence may be inferred, in determining whether the company was or was not guilty of negligence."

The opinion of the Court disposes of the case at bar in the following words:   "And it seems to us that there can be no doubt but what the intestate of the plaintiff was also guilty of negligence, if the evidence be true and every word of it believed.   This issue is then not one that must be found by a jury, but one that may be found by the Court, it does not present a question where reasonable men might put different constructions upon it, and come to the conclusion that the plaintiff's intestate was not guilty of negligence."   By this I presume the Court means that the negligence of the deceased was the ultimate proximate cause.   This remarkable finding, coupled with the unqualified assertion that no reasonable man can put a different construction upon it, becomes still more remarkable in view of the fact that two members of this Court *have* put a different construction upon it.   This exquisite but unconscious satire upon the rule itself, well illustrates its inherent fallacy.   I do not mean to be flippant or to treat the opinion of the Court with any disrespect, but surely it is a legitimate argument to show that it necessarily involves

a *reductio ad adsurdum.* If reasonable men *can not* take a different view of this matter, it follows that the two Judges who *have* taken a different view of it can not be considered as reasonable men. But suppose two other Judges should in some other case have the misfortune to differ from a majority of the Court as to the effect of the evidence, they also would come under the ban. This would leave the remaining member of the Court far above his associates upon the lonely pedestal of solitary infallibility. Suppose he too should fall from his high estate, what would become of the Court? And yet this Court *must* say that no reasonable man can draw but one conclusion from the evidence, or the case *must* go to the jury. Why not let it go to the jury, as was said in Allen's case, should be done in all cases of doubt? The Court is not only putting itself in the place of the jury, but is deciding the case by a majority verdict.

Another exceedingly able and interesting opinion is the dissenting opinion of Justice BYNUM in *Wittkowsky v. Wasson*, 71 N. C., on p. 458. The present attitude of the Court renders that opinion almost prophetic.

The opinion of the Court in the case at bar says that the evidence introduced by the plaintiff must be taken as true, as far as he is concerned. This absolutely reverses the reason of the rule. A party is estopped from impeaching the credibility of his witnesses, but not from denying the correctness of their statements. Moreover, much of the evidence was brought out by the defendant on cross-examination. On a motion for nonsuit, the *defendant* admits the truth of the plaintiff's evidence, which must be construed in the light *most favorable to the plaintiff.* So construing the evidence, can anyone say that if the engine had been going at not more than four miles an hour, the maximum speed allowed by the ordinance, the engineer could not have stopped in time to prevent

the killing? As the intestate was going in the same direction, if he were walking at the rate of three miles an hour, the train would have gained on him only one mile in an hour. The intestate is presumed to have known the law, and he had a right to assume that the defendant would obey the law. He had a right to presume that the defendant would give him the ordinary signals required by law, and would not run him down and crush the life out of him without giving him some slight warning. Surely a human life is still worth something ---the pulling of a bellcord, the opening of a whistle. We are constantly told that we should be shocked at the excessive verdicts of juries. That is often the case, but there are other things which also touch my judicial sensibility. A human form mangled beyond recognition, and an immortal spirit hurled into eternity without a moment's warning, are a greater shock to the instructed conscience of a Christian age than any verdict rendering merely pecuniary damages. This may be called mere sentimentality. Be it so. I can never hope to attain that high plane of judicial temperament where I shall be entirely free from human sympathy. In addition to the weight of reason and authority in favor of drawing the line at *affirmative* verdicts, another advantage is that it is a natural boundary, seen and known of all men. Where the dividing line between great principles are marked by nothing more substantial than stakes, which can easily be put down, and as easily pulled up and moved, the principles themselves are in imminent danger.

I deeply feel the importance of this decision, and may overestimate its danger. I hope I do, but it seems to me to involve ultimate results far reaching and dangerous in their nature. With such strong convictions and sincere apprehensions, I can not afford to cast away the moorings of the past, and turn

my opinions loose to float without chart or compass, the aimless driftwood of a shoreless sea.

CLARK, J., dissenting.   The jury system, whatever its defects, is the best which the wisdom of the ages has yet evolved for the ascertainment of the truth of disputed issues of fact.   It is the bulwark of the liberty and the rights of the citizen.   The line between the province of the Court and of the jury was distinctly run and marked by our ancestors in the Act of 1796, now Code sec. 413.   BYNUM, J., in *Wittkowsky v. Wasson,* 71 N. C., 458, ably and prophetically pointed out the evils of the judiciary passing beyond that line and invading the province of the jury as the sole triers of the facts.   It is to be deeply regretted that his views did not then prevail.   It is a still further invasion of the province of the jury, and contrary to a long line of the decisions of this Court (as Mr. Justice DOUGLAS has shown) to permit a Judge to direct an affirmative finding, which is nothing less than the Court passing upon the evidence and holding that a fact is sufficiently proved.   It is the province of the jury to disbelieve uncontradicted evidence if they attach no faith to the witnesses.   If there is no evidence in support of the party having the burden of proof upon an issue, the Judge may direct a negative finding for its absence, or if the uncontradicted evidence is in support of the contention of the party having the burden of proof, the Court may tell the jury that "if they believe the evidence" to find in favor of that side, but the Judge can not even in such case direct an affirmative finding, for that is to pass upon the credibility of the witnesses and the weight of the evidence, which the jury alone is authorized to do.