HOKE, J., concurring; CLARK, C. J., dissenting. *Page 324 
This action is brought to recover damages for the alleged negligent killing of plaintiff's intestate, Paul Exum. At the conclusion of the evidence a motion to nonsuit was allowed, and plaintiff appealed.
The facts are sufficiently stated in the opinion of the Court by Mr.Justice Brown.
The evidence in this case was all introduced by the plaintiff and in its most favorable aspect for him to prove these facts:
The intestate, Paul Exum, was an employee of defendant in its shops at South Rocky Mount, a man of sound mind, about 34 years old and with no bodily infirmity. On the morning of 1 February, 1907, the intestate was walking south on the main-line track of defendant, going from North Rocky Mount, about a mile, to South Rocky Mount to his work. The regular "shop train" of defendant, used to carry employees at the same hour every morning, had left North Rocky Mount on its regular run for South Rocky Mount and was using the main-line track, going in same direction at from 12 to 15 miles per hour. It ran over the intestate and killed him. At the time of the casualty the intestate was in the full possession of his faculties, walking briskly on the main-line track. There was nothing unusual about his appearance, except that he appeared to plaintiff's witness, Thorp, to be looking down on the track.
There are half-dozen tracks between North and South Rocky (410) Mount with spaces of 6 feet between them, which spaces are used by pedestrians and bicyclists. The tracks are in constant use by all kinds of trains and engines.
The evidence discloses nothing about the intestate to indicate to the engineer of the shop train other than that he would step off the track at any moment and let him pass.
The intestate was an employee of defendant at its South Rocky Mount shops, and must have been familiar with the constant passage of trains over these tracks, and especially with the schedule of the shop train.
It must be admitted that the intestate was entirely out of his place walking on a main-line track under the circumstances and conditions disclosed by the evidence. He should have used the established walkways between the tracks, as witness Thorp was doing, or else he should have taken the shop train provided by defendant for its employees who resided in North Rocky Mount.
That the intestate was guilty of great carelessness and negligence in failing to use his faculties and keep a vigilant lookout for engines while *Page 325 
on the railroad track is established by a multitude of decisions of this Court, over thirty-five in number. Coleman v. R. R., 153 N.C. 325.
In referring to this rule of law in Cooper v. R. R., 140 N.C. 212, Mr.Justice Hoke well says: "This rule is so just in itself and so generally enforced as controlling that citation of authority is hardly required."
The rule applies to those who cross the railroad tracks and with equal if not greater force to those who walk up and down them.
It is immaterial whether we consider the intestate in the light of a trespasser or licensee, the same obligation to look, listen, and to exercise vigilance rested upon him.
This Court has held uniformly that "even where it is conceded that one is not a trespasser in using the track as a footway from a foundry to his house, it behooves him to be still more watchful. The license to use does not carry with it the right to obstruct the road and impede the passage of its trains. A railroad company has the right to the use of its track, and its servants are justified in assuming that (411) a human being who has the use of all his senses will step off the track before a train reaches him." McAdoo v. R. R., 105 N.C. 153;Parker v. R. R., 86 N.C. 221; Meredith v. R. R., 108 N.C. 616; Norwoodv. R. R., 111 N.C. 236; High v. R. R., 112 N.C. 385.
In Neal v. R. R., 126 N.C. 638, this Court said: "If plaintiff's intestate was walking up defendant's road, in open day-light, on a straight piece of road, where he could have seen defendant's train 150 yards, and was run over and injured, he was guilty of negligence; and although the defendant may have been guilty of negligence in running its train at a greater rate of speed than was allowed by the town ordinance, or in not ringing its bell as required by said ordinance, and in not keeping a lookout by its engineer, as it ought to have done, yet the injury would have been attributed to the negligence of plaintiff's intestate."
Speaking of the principle involved in the cases determining the injured party's negligence, the Court says: "According to the principle declared in all of them, the question of liability is not to be solved by any reference to what the defendant may have done or omitted to do, but the conduct of the plaintiff; and if the latter would not see when he could see, or would not hear when he could hear, and remained on the track in reckless disregard of his own safety, the law adjudges any injuries he may have received to be the result of his own carelessness." Bessent v. R. R.,132 N.C. 940; Pharr v. R. R., 133 N.C. 615, approving Neal v. R. R., andBessent v. R. R.; Allen v. R. R., 141 N.C. 340; Crenshaw v. R. R.,144 N.C. 325; Royster v. R. R., 147 N.C. 347.
In Syme v. R. R., 113 N.C. 558, it is held that "When a person is injured while walking on a railroad track by an engine that he might *Page 326 
have seen by looking, the law imputes the injury to his own negligence," and "that the engineer was justified in assuming that the intestate hadlooked and had notice of his approach and would clear the track in ample time to save himself from harm."
(412) In the recent case of Beach v. R. R., 148 N.C. 153, this subject is discussed elaborately by Mr. Justice Walker and all the cases cited and reviewed.
The plaintiff seeks to take this case out of the established rule by attempting to prove that the engineer of the shop train could have avoided killing the intestate by exercising reasonable care, and failed to do so. This condition is based upon the testimony of Thorp, who says: "I was between the last western track and the eastern track when I saw Exum, and he was walking along with his head down, walking very brisk, with a tin bucket on his arm." Thorp says he saw the shop train approaching the intestate, and when it was 150 feet from Exum, "I commenced to wave at him and shout. Ran 20 or 25 feet towards him, waving my hat at him and halloaing to him. He seemed to be walking right along and did not notice me. Then I commenced waving train down and pointing at the track. I did not succeed in attracting anybody's attention." Thorp further states that there was nothing between him and Exum, or between him and the train, to obstruct the view.
We fail to see anything in this evidence to take this case out of the rule laid down in the cases cited. It is not even suggested, much less contended, that the engineer purposely and willfully ran down and killed his coemployee. There is no evidence whatever that the engineer actually saw Thorp's signals in time to stop, or that he saw them at all.
But plaintiff contends that it was the engineer's duty to see them. The engineer's duty was to keep a vigilant lookout in front of him, and especially along the track over which he was running. It was no more the duty of the engineer to see Thorp's signals than it was the duty of the intestate. It was as much incumbent upon him to keep a sharp lookout as upon the engineer. In fact, had the engineer seen Thorp's signals, he had a right to assume up to the last moment that the intestate also saw them and that he would step off the track out of harm's way.
The intestate was a sound man, with no apparent infirmity, walking briskly along ahead of a train with the uses and schedule of which (413) he was necessarily familiar. The engineer had every reason to believe that such a man was exercising vigilance and would get out of the way and let him pass.
In this class of cases it will be found generally that where the company has been held liable it is in cases where the party injured was not upon equal chances with the engineer to avoid the injury — where there was something suggesting the injured party's disadvantage or disability, *Page 327 
as where the party injured is lying on a railroad track, apparently drunk or asleep, or is on a bridge or trestle, where he can not escape, or can not do so without great danger. In such cases, if the engineer saw the party injured, or by proper diligence could have seen him, the company is held liable for the engineer's negligence. Neal v. R. R., 126 N.C. at p. 639. See, also, Norwood v. R. R., 111 N.C. 236; High v. R. R., 112 N.C. 385;McAdoo v. R. R., supra.
Assuming, however, that the engineer was negligent as well as the intestate, the negligence of both is concurrent, and, as said Mr. JusticeAllen in Harvell v. Lumber Co., ante., 254: "It is well settled that, when the plaintiff and the defendant are both negligent and the negligence of both concur and continues to the time of the injury, the negligence of the defendant is not in the legal sense proximate."
As lately held by a unanimous Court in Beach's case, supra, when a person is injured upon a railroad track, which injury could have been avoided by him by looking and exercising proper vigilance, the negligence of such person in this respect is concurrent, and damages are not by him recoverable on that account.
Upon an unbroken line of authorities we are of opinion his Honor properly sustained the motion to nonsuit.
Affirmed.
Cited: R. R. v. R. R., 157 N.C. 373; Shepherd v. R. R., 163 N.C. 522;Talley v. R. R., ib., 570; Abernathy v. R. R., 164 N.C. 94; Ward v.R. R., 167 N.C. 158; Treadwell v. R. R., 169 N.C. 699; Davis v. R. R.,170 N.C. 587; Home v. R. R., ib., 656.
(422)