CLARK, C. J., and DOUGLAS, J., dissenting. *Page 657 
This action was brought by the plaintiff to recover damages for the alleged negligent killing of the intestate by the defendant. The plaintiff's intestate, Fanny Scales, was walking along the track of defendant near. Winston in the direction of Wilkesboro, accompanied by Will Smith, when an engine pushing four box cars approached from the south. There was evidence tending to show that the whistle was sounded twice and that the intestate could have heard it and could also have heard the noise of the train, and that she could easily have seen the train in time to have stepped from the track to a place of safety. There was nothing to prevent her doing so. Persons farther away from the train than the intestate was at the time she was killed both saw and heard it. William Hairston, a witness for the plaintiff, testified: The train coming up through the cut made a great deal of noise and persons could easily have looked back and seen the train if they had eyes, and could have gotten off if they wanted to. Will Smith had the intestate by the hand or wrist; she was on the sills of the track and he was walking on the ground beside the sills. They (935) seemed to be walking along laughing and talking. She could have stepped off on either side of the track. If she had ordinary hearing she was bound to have heard the train.
The plaintiff himself testified: When the girl was killed she could easily have gotten from the track, more easily to the left than to the right. Any person could easily have gotten off the track; all they had to do was to step off; they could easily have stepped off and been out of danger; between the two tracks it is level and she could easily have stepped off.
The evidence also tended to show that the intestate was killed near the end of a cut which was directly under the place where Main Street was when it ran over the embankment and before the embankment was cut down for a railroad track; but the cut had not been used as a street, though it had been used by pedestrians "as a common footpath" when going from one of the factories to the northwest portion of Winston. In reference to this matter the plaintiff testified: This cut does not pretend to be a street; part of Main Street used to be where this cut is, and they have narrowed that street very much, and on the west side of the cut, up an embankment, there is still a driveway; this street is 35 feet higher than the track; people walk along the track as they do everywhere. *Page 658 
The ordinance of the city of Winston provides that it shall be unlawful for trains and locomotives to run at a greater speed than eight miles an hour, and the intestate was killed within the city limits; the train was running 20 miles an hour when the intestate was killed and it was in the daytime. There were two men on the end of the front or leading box car, who waved their hands and halloed to the intestate and her companion as the train approached them. A witness,. Ida Douglas, testified: That she was on the track and heard the train blow at the south end of the cut; she ran to the switch and got off; (936) as she passed the intestate she said to her, "Fanny, the train is coming," to which the intestate replied, "All right, honey." The intestate remained on the track and was killed by the train. At the close of the plaintiff's testimony the defendant moved for judgment of nonsuit under the statute. The court intimated that it would charge adversely to the plaintiff, whereupon he submitted to a nonsuit and appealed. The plaintiff assigns as error:
1. That the court refused to submit the plaintiff's third issue as to the last clear chance of the defendant to avoid the injury, which issue, it is stated in the record, was submitted in apt time.
2. That the court allowed the defendant's motion to nonsuit the plaintiff.
3. That the court directed the jury to answer the second issue "Yes" and the third issue "Nothing."
If the court dismissed this action upon the defendant's motion, or if, in deference to an adverse intimation of the court, the plaintiff submitted to a judgment of nonsuit and appealed, this Court must consider all the evidence for the plaintiff "as true, and regard it in the most favorable light" for him, as stated by this Court in Collins v. Swanson, 121 N.C. 67. The rule that where there is a nonsuit in submission to an intimation of the court against the plaintiff's right to recover, the evidence introduced by the plaintiff must be taken as true for the purpose of deciding whether, in any reasonable view of it, he can recover, has frequently received the sanction of this Court. Springs v. Schenck, 99 N.C. 551; 6 Am. St., 552; Gibbs v. Lyon, 95 N.C. 146; Abernathy v. Stone,92 N.C. 217. All of the witnesses in this case were introduced by the plaintiff, and he represented, therefore, that they were credible. (937) The law will not permit him to impeach their credibility, although he could have shown, if he had been disposed and able *Page 659 
to do so, that the facts were different from those to which they testified. It is stated in the case that the plaintiff submitted to a nonsuit because the court intimated that it would so charge the jury that they would have to answer the first issue "Yes," the second issue "Yes," and the third issue "Nothing"; but it does not clearly appear what particular form the charge of the court would have taken, if it had been delivered to the jury. We cannot infer from the statement in the record that the court intended to direct a verdict peremptorily for the defendant, and the only inference we can draw from the language is that the court would have charged the jury that if they believed the evidence they should answer the issues as already indicated.
The question, then, is whether, if the evidence is taken as true, there is any reasonable view of it which would entitle the plaintiff to a trial of the issues by a jury, the evidence being considered in the most favorable light for him. In Neal v. R. R., 126 N.C. 641, 49 L.R.A., 684, the Court, referring to facts similar to those we have in this case, says: "The usual rule is to submit the issue to the jury with the instruction that if they believe the evidence they will find the issue `Yes' or `No', as the case may be. This is usually a good rule and in many cases saves an appeal to this Court. But the court could not do that in this case without impeaching the plaintiff's witnesses. All the evidence was offered by the plaintiff, and the defendant had demurred to it. This was an admission by the defendant that the evidence was true. The plaintiff offering the evidence had vouched for its credit. He could not impeach its credit. As to the plaintiff, it stood unimpeached and unimpeachable. It is true that if the plaintiff had offered other evidence tending to show the facts different, then it would have become a matter for the jury as to which (938) witness they would believe."
All the evidence in this case, as we have stated, was introduced by the plaintiff, and there is no contradiction in it. It is plain, direct, and conclusive in establishing negligence on the part of the plaintiff's intestate, which was the proximate cause of her death. It can make no difference whether he has failed to show negligence of the defendant, or whether, having shown such negligence, he has also shown by his own proof that the intestate's negligence was concurrent, up to the last moment, with that of the defendant, or that, after the defendant was seen or could have been seen to be negligent, the intestate had the last clear chance to avoid the injury. In either case, the plaintiff would not be entitled to recover. The case discloses that the situation of the plaintiff's intestate was such as enabled her to see and hear *Page 660 
the train as it approached her in ample time for her to have left the track and averted the injury which caused her death.
We are unable to distinguish this case from Neal v. R. R., supra. The facts in our case appear to be much stronger for the purpose of establishing contributory negligence than the facts in that case were. A brief statement of the facts will suffice to show that the death of the plaintiff's intestate was caused by her own negligence, and that the case of Neal v. R. R., supra, should apply and control in the decision of this case. The plaintiff's intestate was walking along the defendant's track in the daytime, with nothing, so far as appears, to obstruct her view, and nothing to prevent her hearing the whistle or the noise made by the train. Indeed, she was told by one of the witnesses that the train was coming, and she answered in such a way as to clearly indicate that she was aware of its approach. In order to save herself, there was nothing to do but to step from the track, a mere matter of a moment. And, besides, it appears that her companion directed her attention to the train, and he stepped off and was not injured. She was (939) not on a public street, if that could make any difference, for it is in evidence that the cut was not considered as any part of the street, though it was used by the people in the vicinity as a common footpath. If it had been a part of the street, and the duty of sounding the whistle or ringing the bell was imposed upon the defendant for that or any other reason, and the company would have been negligent if it had not given warning of the approach of the train, it is conclusively shown in this case that the whistle was sounded and that the noise made by the train could easily have been heard by the intestate; and it further appears, as well as that fact can be established by testimony, that she actually did know that the train was coming. Everybody else saw and heard the train and left the track, and why was she not guilty of negligence in not doing what they did, and did easily? She had equal opportunity with them, and her failure to avail herself of it was an omission of duty on her part, which was necessarily the direct and proximate cause of her injury and death. The wrong, therefore, cannot, in any view of the testimony and in contemplation of law, be imputed to the defendant, even though it may have been guilty of negligence.
In Neal's case the intestate was walking along the track and was seen by the engineer, but there was no direct evidence that the intestate either saw or heard the engine. In reference to the facts of that case, the Court said: "If the plaintiff's intestate was walking upon the defendant's road in open daylight, on a straight piece of road, where he could have seen the defendant's train for 150 yards, and was *Page 661 
run over and injured, he was guilty of negligence, and although the defendant may have also been guilty of negligence in running its train at a greater rate of speed than was allowed by the town ordinance, or in not ringing the bell as required by the ordinance, and in not keeping a lookout by its engineer, as it should have done, yet the injury would be attributed to the negligence of the plaintiff's (940) intestate."
In McAdoo v. R. R., 105 N.C. 140, this Court held that the plaintiff was guilty of negligence, which in law was the proximate cause of his injury, because he stood or walked upon the track with his back towards the engine and did not see it before he was stricken, and that the speed of the train and the failure to give a signal did not alter the case.
In High v. R. R., 112 N.C. 385, the Court laid down the principle that the failure of the engineer to keep a proper lookout subjects the company to liability only in those cases where, if he had seen the situation of the injured party, it would have become his duty to have given the signal, and that he had the right to assume up to the last moment, when it was too late to prevent the injury, that the person on the track would get out of the way, and that it made no difference how near the person was to the engine or train, or how fast the train was running. It appeared in that case that it was a windy day, that the train was late, that the plaintiff was wearing a bonnet which obstructed her view; but the Court said that those facts could make no difference in the decision of the case, and that, under the facts and circumstances presented by the evidence for the plaintiff, the law referred the injury to her negligence as its proximate cause, and hold the company blameless. Many other cases to the same effect have been decided by this Court. According to the principle declared in all of them, the question of liability is not to be solved by any reference to what the defendant may have done or omitted to do, but by the conduct of the plaintiff, and if the latter would not see when he could see, or would not hear when he could hear, and remained on the track in reckless disregard of his own safety, the law adjudges any injuries he may have received to be the result of his own carelessness. Parker v. R. R.,86 N.C. 221; Meredith v. R. R., 108 N.C. 616; Norwood v. (941)R. R., 111 N.C. 236; Syme v. R. R., 113 N.C. 565; Stewartv. R. R., 128 N.C. 518; Wycoff v. R. R., 126 N.C. 1152; Sheldon v.Asheville, 119 N.C. 606; Ellerbe v. R. R., 118 N.C. 1024.
But Lea v. R. R., 129 N.C. 459, is a direct authority in support of the ruling of the court below. In that case it appeared that the defendant, for the purpose of making up a freight train, was moving *Page 662 
two cars with an engine between them, one of the cars being drawn and the other pushed by the engine, as in our case. The intestate of the plaintiff was standing on the end of the cross-ties in the town of Durham at a place where the track was used by pedestrians. There was no one on the front car to give a signal of the approach of the train, and there was no bell rung or whistle sounded. The ordinance of the town of Durham prohibited the running of trains within its limits at a greater rate of speed than 8 miles an hour, and the engine and cars were running at a greater rate of speed than the ordinance allowed. This Court held, upon the facts thus stated, that the jury should have been instructed that, "taking the plaintiff's evidence and also the defendant's evidence (there being no conflict in the evidence) as true, the conclusion could not reasonably be avoided that the plaintiff's intestate by his own negligence contributed to cause the injury." And further, that, "taking all the evidence together, there was nothing which placed the intestate at a disadvantage as regards avoidance of the injury, and when such is the case no recovery can be had where both parties, that is to say, the intestate and the railroad company, were negligent."
The only difference between Neal's case and Lea's case on the one side and our case on the other is that in those cases the evidence tended strongly to show that the intestate did not see or hear (942) the train, although he could have done so; while in our case the evidence is conclusive that the deceased did know of its approach. The circumstances of themselves are sufficient to show that she did, and, besides, her own words, uttered in reply to a warning from one of the witnesses who was passing her at the time, practically excludes every doubt in regard to the matter. Her death was an unfortunate occurrence, but upon the undisputed facts of this case, the law does not attach any blame to the defendant, but imputes the wrong or negligence, which caused her death, to her own conduct in not avoiding the injury when she could easily have done so.
In the view we take of the case, it is not necessary to consider the other assignments of error.
Judgment affirmed.