## JAMES I. BEACH, ADMINISTRATOR OF TAYLOR, v. SOUTHERN RAILWAY COMPANY.

(Filed 29 May, 1908.)

1. **Railroads—Trespassers—Negligence, Concurrent—"Look and Listen."**

   It is the duty of a trespasser upon a railroad track both to look and listen for approaching trains, and when by looking the injury complained of would have been avoided, his negligence in this respect is concurrent, and damages are not recoverable by him incurred on that account.

2. **Same.**

   An engineer on a moving train has the right to expect that a trespasser on the track has exercised due care in looking as well as listening for approaching trains; and, though there may have been observed by him an engine standing near the place of the injury, which was evidently making noises to interfere with hearing the approach of his train, the duty of the trespasser to look is not diminished, but increased.

3. **Same—Nonsuit.**

   When it is shown by the evidence that plaintiff's intestates were trespassers on defendant's railroad track, walking in front of an approaching train in the direction the train was moving; that it was a bright day and the track of defendant was straight at that place; that there was no obstruction to prevent their seeing the train for a distance of from one-half to three-fourths of a mile, or the engineer from seeing them; that the engineer, on approaching, seeing they did not leave the track, sounded the danger signal and applied the brakes in a fruitless effort to avoid killing them; that the engineer saw an engine standing near the place of the accident, and before it occurred, evidently making noises to prevent their hearing the approaching train, a motion as of nonsuit upon the evidence was properly sustained.

ACTION tried before *Guion, J.,* and a jury, at June Term, 1907, of BURKE.

The intestates of the plaintiff were run over and killed at the same time by a passenger train while they were walking on the track of the defendant, at a point about 300 yards west of the depot at Morganton. The accident occurred about 10 o'clock A. M. on the morning of 5 December, 1905, a clear,

bright day, and at a point on defendant's road where they might have seen the approaching train for a distance of from one-half to three-fourths of a mile before it reached them, the track being straight and unobstructed for at least that distance. The roadbed runs almost due east and west at this point, and the intestates were walking east along and on the track, while the morning passenger train was coming from the west and moving in the same direction in which the intestates were walking. The station signal was sounded at the signal board, just one mile west of the depot; the highway crossing signal given just east of this point, and the engineer, on approaching intestates, who were walking along the track in front of the train, seeing that they didn't step from the track, sounded the danger signal and applied the brakes in the effort to stop the train, but before he could do so the engine came in collision with intestates and inflicted the injuries of which they died. The bell had been turned on when the station signal was given, and was ringing automatically from that point. At the point where the intestates were stricken the road runs through a cut about twenty-five feet deep and from twenty to thirty feet wide at the bottom and from forty to sixty feet wide at the top, and along the main line and on the south side and at a distance of eight or ten feet a side track runs parallel with the main line for some distance. On this side track and near where the intestates were walking there stood a freight train with engine attached, from which engine some smoke and steam were escaping, making a noise, which, it was contended, prevented the intestates, who were walking on the main line, from hearing the approach of the passenger train on the main line or the signals given by it. The track was straight and unobstructed, and there was nothing to prevent the engineer in charge of the engine pulling this train from seeing the intestates walking on the track ahead of him after he had gotten within a distance of one-half a mile of them, and nothing to prevent the intestates from seeing him.

These were the facts as testified to by all the witnesses, and there was no material conflict in the evidence except as to the distance within which the train had approached the intestates when the danger signal was repeatedly sounded and the brakes applied in the effort to stop the train before it came in collision with the intestates, and as to whether the intestates were walking between the rails or outside of the rails, some of the plaintiff's witnesses differing as to this.

The plaintiff contended that the steam and smoke escaping from the freight engine on the side track was notice to the engineer in charge of the passenger train, from which he should have drawn the inference that the intestates, who were walking on the main line, could not hear the approaching train, and therefore he should have stopped the train until the intestates had left the track; while the defendant contended that the engineer had a right to assume that the intestates had looked and had notice of the approach of the train, and to act on the assumption that they would clear the track in time to avert the injury.

The court charged the jury, among other instructions given, and at the request of the plaintiff's counsel, "that, in order to answer the issue as to defendant's negligence affirmatively, the jury must find from the greater weight of the testimony that the engineer, Keever, knew when approaching the intestates on the track, and in time to have stopped his engine by the use of appliances at his command before coming in contact with them, that it was impossible for them to hear the noise of the approaching train or signals, where they were walking on the track, on account of the noise made in the cut by the engine of the freight train standing on the side track."

The engineer, Daniel Keever, testified as follows: That he had been an engineer, running on this road, since 1887. He was running the engine of the train coming from the west, which killed intestates. He could see the men on the track and they could see his engine at another bridge three-quarters

of a mile west of the bridge where they were killed, and that he gave the station blow there. He blew for the road crossing when he first saw them, just west of the tannery crossing; that the two men seemed unconcerned and paid no attention to the alarms given—did not look around; that he could see that the engine on the side track was under steam, but could not see it was making any unusual noise; that it was blowing off steam and that he could see the steam rising and smoke also from the engine, and knew it was obliged to make some noise; that he saw the engine on the siding when he passed the tannery (five hundred yards from it), and that he saw the men on the track when he was west of the tannery, and when at the same point saw the freight engine on the side track. He gave the signal one hundred and twenty or one hundred and thirty feet before he reached the intestates; that people usually got off sixty to eighty feet before he reached them. He attempted to stop the train as soon as he could after he saw they were not getting off. He stopped the train in about two hundred and eighty feet and applied the emergency brakes for three hundred feet, perhaps; that he "would consider two hundred and eighty feet or three hundred feet an extra good stop."

Joseph R. Patton, one of the witnesses for the plaintiff, testified that the train, with the appliances in use and under the engineer's control, could, in his opinion, have been stopped within one hundred yards.

The defendant moved to nonsuit the plaintiff, under the statute. The motion was refused, and defendant excepted. There was a verdict for the plaintiff upon the issues submitted to the jury. Judgment having been pronounced thereon, the defendant appealed.

*A. C. Avery* and *Shepherd & Shepherd* for plaintiff.
*S. J. Ervin* for defendant.

WALKER, J. The question involved in this case has been before this Court so many times that the law applicable to the facts as disclosed by the record has been as conclusively settled as perhaps any principle within the wide range of jurisprudence. The theory of the plaintiff, which was adopted by the court, proceeds upon the erroneous idea that a man who goes upon the track of a railroad company, not by its permission or license, but as a mere trespasser, is not bound to use both senses of sight and hearing, but only the latter. Every man in the possession of his natural faculties must know, and the law will not hear him say he does not know, that a railroad track is a place of constant and almost imminent danger. If he chooses to use it as a footway when he is not expressly or impliedly invited to do so, he must understand that he does so at his peril, and that he will at all times be menaced by trains moving to and fro upon the track. Generally speaking, a railroad track is intended for the running and operation of trains, and not for a walkway, and the company owning the track has the right, unless it has in some way restricted that right, to the full and unimpeded use of it. The public have rights as well as the individual, and usually the former are considered superior to the latter. That private convenience must yield to the public good and public accommodation is an ancient maxim of the law. If we should for a moment listen with favor to the argument and eventually establish the principle that an engineer must stop or even slacken his speed until it may suit the convenience of a trespasser on the track to get off, the operation of railroads would be seriously retarded, if not practically impossible, and the injury to the public might be incalculable. The prior right to the use of the track is in the railway as between it and a trespasser who is apparently in possession of his senses and easily able to step off the track. This is a most reasonable rule, and if it should at this late day be abrogated we would reverse one of the most salutary and fundamental maxims of

the law.   Every man must so use his own property as not to injure another, but this does not mean that a trespasser on a railroad track has any right to prevent the proper use of its track by a railway company.   If an engineer sees that a person on the track, even though he be a trespasser, is not in the possession of either of his senses of sight or hearing, and therefore is unable to take care of himself, the maxim applies, and he must at once adopt such measures as common prudence requires to take care of him and to see that he is not injured. He must, of course, keep a constant lookout ahead, as a general rule, for, while no person has the right to use the track as a footway, except in the instances we have mentioned, if he does so use it and is lying helpless on the track, or is blind and deaf or otherwise unable to take care of himself, and this will appear to the engineer if he exercises ordinary prudence, common humanity requires, and so does the law, that he should use such precautions to prevent injury to him as the situation and circumstances would suggest to a prudent man.   The trespasser cannot be killed or even injured because he has committed a legal wrong in going upon the track, if he is not in the possession, at the time, of the ability to care for himself and the engineer knows it, or should know it, if he is careful in the performance of his duties.   If a trespasser on a railway track can by the exercise of due care see an approaching train in time to leave his place of danger, or if he can hear the train in time for that purpose, he must use the senses and faculties with which he has been endowed and leave the track; otherwise he becomes the author of any injury he may receive, and has no right in law to complain of the railway company.   *Volunti non fit injuria.*   The engineer has the right to presume, even up to the last moment, when it is too late to save him, that he will leave the track in due time, provided he appears to have possession of his ordinary faculties and of the sense of sight or hearing and is so situated that he can use them for his own safety.   It is useless to discuss so plain a

proposition of law, and if it is applicable to the facts of this case the court erred in refusing the nonsuit. We entertain no doubt that the actual decisions of this Court upon a similar if not an identical state of facts show that this case falls within the principle, and therefore the rulings and charge of the court were erroneous. The most recent case, perhaps, is *Bessent v. Railway*, 132 N. C., 934, where we said: "All the evidence in this case, as we have stated, was introduced by the plaintiff, and there is no contradiction in it. It is plain, direct and conclusive in establishing negligence on the part of the plaintiff's intestate, which was the proximate cause of her death. It can make no difference whether he failed to show negligence of the defendant, or whether, having shown such negligence, he has also shown by his own proof that the intestate's negligence was concurrent up to the last moment with that of the defendant, or that, after the defendant was seen or could have been seen to be negligent, the intestate had the last clear chance to avoid the injury. In either case the plaintiff would not be entitled to recover. The case discloses that the situation of the plaintiff's intestate was such as enabled her to see and hear the train as it approached her in ample time for her to have left the track and averted the injury which caused her death. We are unable to distinguish this case from *Neal v. Railroad, supra.* * * * The plaintiff's intestate was walking along the defendant's track in the daytime, with nothing, so far as it appears, to obstruct her view and nothing to prevent her hearing the whistle or the noise made by the train. * * * Everybody else saw and heard the train and left the track, and why was she not guilty of negligence in not doing what they did, and did easily? She had equal opportunity with them, and her failure to avail herself of it was an omission of duty on her part, which was necessarily the direct and proximate cause of her injury and death. The wrong, therefore, cannot in any view of the testimony and in the contemplation of law be imputed to the

defendant, even though it may have been guilty of negligence." After citing the cases, the Court proceeds: "According to the principle declared in all of them, the question of liability is not to be solved by any reference to what the defendant may have done or omitted to do, but by the conduct of the plaintiff; and if the latter would not see when he could see, or would not hear when he could hear, and remained on the track in reckless disregard to his own safety, the law adjudges any injuries he may have received to be the result of his own negligence," citing the following cases: *Parker v. Railroad*, 86 N. C., 221; *Meredith v. Railroad*, 108 N. C., 616; *Norwood v. Railroad*, 111 N. C., 236; *Syme v. Railroad*, 113 N. C., 565; *Stuart v. Railroad*, 128 N. C., 518; *Wycoff v. Railroad*, 126 N. C., 1152; *Sheldon v. Asheville*, 119 N. C., 606; *Ellerbee v. Railroad*, 118 N. C., 1024.

In *Lea v. Railroad*, 129 N. C., 459, the same principle is thus stated: "The intestate was not killed at a street crossing nor on a track much used, even as a footway. The case does not fall under any of the exceptions that require that the whistle should be sounded or the bell should be rung or the train stopped. * * * The doctrine of the last clear chance—proximate cause—does not arise in this case. Both were guilty of negligence and both were on equal terms. The intestate was at no disadvantage. He was on equal opportunities with defendant. *Neal v. Railroad*, 126 N. C., 639. The intestate was unfortunately killed, but it will not do to say that the railroad company is liable in damages for every man killed by its trains. So far as we remember, every principle involved in this case is decided in *Neal's case*, and that case must control this case. We do not think the plaintiff was entitled to recover upon the evidence." It may be well to state here what the Court said in *Neal v. Railroad, supra*, as it is considered a leading case: "If plaintiff's intestate was walking upon defendant's road in open daylight, on a straight piece of road, where he could have seen defendant's

train for one hundred and fifty yards, and was run over and injured, he was guilty of negligence. And, although the defendant may have also been guilty of negligence in running its train at a greater rate of speed than was allowed by the town ordinance, and in not keeping a lookout by its engineer, as it should have done, yet the injury would be attributed to the negligence of the plaintiff's intestate. It has been so held in *Meredith v. Railroad,* 108 N. C., 616; *Norwood v. Railroad,* 111 N. C., 236; *High v. Railroad,* 112 N. C., 385. Those · cases held that it was not negligence in a railroad company where its train runs over a man walking on a railroad track, who is apparently in possession of his faculties and in the absence of any reason to suppose that he is not. This is put upon the ground that the engineer may reasonably assume that the man will step off in time to prevent injury. In *McAdoo v. Railroad,* 105 N. C., 140, this doctrine is expressly established, and it is held (as law) in that case that, on account of plaintiff's negligence in standing on the road and allowing defendant's train to run over him, there was concurrent negligence which prevented him from recovering damages. *McAdoo v. Railroad* has been cited and approved on this point in *Syme v. Railroad,* 113 N. C., 565, and in *Smith v. Railroad,* 114 N. C., 744, and many other cases."

The concurring opinion of *Chief Justice Faircloth* puts our case exactly: "We concur with the Judge below in the opinion that the plaintiff was not entitled to recover, because, by the undisputed facts, considered in any phase presented by them, the plaintiff was negligent in failing to see the train approaching him from behind, while the servants of the defendant were not in fault in acting on the belief that the plaintiff would get out of the way of the engine before it would reach him." But perhaps the law, as applicable to the special facts of this case, has been stated as strongly and as clearly by *Justice Avery* in the following opinions, where he was speaking for the Court, as in any we could possibly cite. In *McAdoo*

*v. Railway,* 105 N. C., 140, the Court said: "When a person is about to cross the track of a railroad, even at a regular crossing, it is his duty to examine and see that no train is approaching before venturing upon it, and he is negligent when he can by looking along the track see the moving train which, in his attempt to blindly cross the road, injures him. Even where it is conceded that one is not a trespasser, as in our case, in using the track as a footway from a foundry to his home, it behooves him to be still more watchful. The license to use does not carry with it the right to obstruct the road and impede the progress of the trains. The railroad company has a right to the use of its track, and its servants are justified in assuming that a human being who has the use of all his senses will step off the track before the train reaches him. According to the plaintiff's own testimony, he stood upon the track, with his back to the engine, and did not see it till after he was stricken by it. He was, therefore, in any aspect of the case, negligent, and the jury would not have been warranted in finding that the defendant could have prevented the injury by using ordinary care.    *    *    *    It is manifest that a reduction of the speed would not have prevented the injury by enabling the plaintiff to see, with his face turned in the opposite direction." That decision, as will *plainly* appear, goes *far* beyond what is necessary to hold in this case in order to decide against the plaintiff. In *Norwood v. Railroad,* 111 N. C., 236, it was said: "When he (the trespasser) placed himself in a position where he was liable to be stricken by a passing engine it was his duty to *keep a sharp lookout,* and if he carelessly, recklessly or in a drunken stupor remained on the track when the engine was approaching and till it came in contact with him, he was negligent. If the engineer was negligent in failing to blow at the crossing or on approaching the bridge, intestate's subsequent refusal or failure to get off the track was nevertheless the proximate cause of the injury sustained, unless it can be

reasonably inferred from the testimony that, after intestate went upon the track, the engineer did see or could by ordinary care have seen, *not simply that he was on the track,* but that he had placed himself in peril by going upon the bridge, or appeared to be lying drunk or insensible in the way of the engine. If it were conceded that the engineer saw the deceased walking along the track, he was justified in believing, up to the last moment, in the absence of knowledge or information that he was insane or deaf, that intestate would take reasonable precaution for his own safety by moving out of the way." So, in *Meredith v. Railway,* 108 N. C., 616: "Where the engineer in charge of a moving engine sees a human being walking along the track in front of it, if such person is unknown to him and is apparently old enough to understand the necessity for care and watchfulness, under such circumstances the engineer may act upon the assumption that he will step off the track in time to avoid injury." *McAdoo v. Railway,* 105 N. C., 140; *Parker v. Railway,* 86 N. C., 221. In the absence of knowledge or information to the contrary, the engineer was justified in supposing that he would look to his own safety, *even when trains were moving on three parallel tracks,* if there was manifestly an opportunity of escape by walking across the railroad to a neighboring track. *Daily v. Railroad,* 106 N. C., 301. The fact that there was no other possible road for persons walking from Paint Rock to Hot Springs would not relieve a man or boy of his age endowed with reason and the instinct of self-preservation from the duty of watchfulness, when he must know and must be always mindful that carelessness will expose him to danger. The boy injured was described by witnesses as bright and smart, but if he was apparently capable of appreciating his peril or his situation it is sufficient to relieve the servants of this company from the imputation of carelessness in assuming that he would step aside before the engine reached him. Considerations of public policy, such as

a reasonable demand for the speedy transportation of mails
and the proper regard for the safety of passengers, forbid that
trains should be stopped for trivial causes, or that the lives of
those on board should be put in jeopardy even to avert mani-
fest danger to others.   We concur with the Judge below in
the opinion that the plaintiff was not entitled to recover, be-
cause by the undisputed facts, considered in any phase pre-
sented by them, the plaintiff was negligent in failing to see
the train approaching him from behind, while the servants of
the defendant were not in fault in acting on the belief that
plaintiff would move out of the way before it could reach
him."   In *High v. Railway,* 112 N. C., 385, where it ap-
peared that a woman wearing a poke bonnet which extended
beyond her face had gone upon the track and was apparently
oblivious of the approach of the train, as much so as was the
intestate in this case, though she was in possession of her
faculties and senses and able to leave the track by taking one
or two steps, the same able and learned Judge said: "Where
an engineer sees on the track, in front of the engine on which
he is moving, a person, walking or standing, whom he does
not know at all, or who is known by him to be in full pos-
session of his senses and faculties, the former is justified in
assuming, up to the last moment, that the latter will step off
the track in time to avoid injury; and if such person is
injured the law imputes it to his own negligence and holds the
railroad company blameless.   *Meredith v. Railroad,* 108
N. C., 616; *Norwood v. Railroad,* 111 N. C., 236.   The
failure of the engineer to keep a strict lookout subjects the
company to liability only in those cases where, if he had seen
the situation of the injured party, it would have become his
duty to pursue such a course of conduct as would have
averted injury.   Whether he saw the plaintiff at a distance of
one hundred and fifty yards or of ten feet, he was not at fault
in acting on the supposition that she would still get out of the
way.   If the plaintiff had looked and listened for approach-

ing trains, as a person using a track for a footway should in
the exercise of ordinary care always do, she would have seen
that the train, contrary to the usual custom, was moving on
the siding. The facts that it was a windy day and that she
was wearing a bonnet, or that the train was late, gave her no
greater privilege than she would otherwise have enjoyed as
licensee, but, on the contrary, should have made her more
watchful." But the case of *Syme v. Railway,* 113 N. C.,
558, would seem to be fatal to the contention of the plaintiff's
counsel that, because the intestate may at the time of the
injury have been deprived of one of his senses, namely, that
of hearing, by the noise of the engine close to him, which was
discharging steam, he was excused from using his sense of
sight. The Court, with reference to a state of facts sub-
stantially the same as are stated in this record, says: "Coun-
sel for plaintiff did not contend that the intestate was de-
ficient in any of his senses or wanting in physical power or
mental faculties, and if they had there would have been no
evidence to support the contention. *A priori,* the engineer
had no reason to think him other than a man possessed of all
of the usual powers of mind and body, and was warranted in
assuming that he would step off the track and avoid a col-
lision, until it was too late to save him. *High v. Railroad,*
112 N. C., 385. When a person is injured while walking on
a railroad track by an engine that he may have seen by look-
ing, the law, as a rule, imputes the injury to his own negli-
gence. *Meredith v. Railroad,* 108 N. C., 616; *Norwood v.
Railroad,* 111 N. C., 236. There being no testimony tending
to bring this case within any exception to the general rule, we
are of the opinion that there was no evidence of a want of
ordinary care on the part of the defendant, while in any
aspect of the case the plaintiff's intestate was negligent in get-
ting upon the track, in front of the engine, without looking,
and exposing his person to injury, when he might have seen
that it was approaching and have avoided the collision by

stepping off the track. We cannot yield to the ingenious suggestion of the able counsel for the plaintiff, that the engineer must have seen the long freight train and known the fact that the engine was 'exhausting heavily,' so as to render intestate as insensible to the approach of the other train as if he had been deaf, and that therefore the defendant's engineer was negligent in not attempting earlier to stop the engine. But it was the duty of the intestate to look as well as listen, under the circumstances, and he was negligent if he failed to use his eyes as well as his ears. *McAdoo's case, supra.* On the other hand, the engineer was justified in assuming that intestate had looked, had notice of his approach and would clear the track in ample time to save himself from harm." The case of *Pharr v. Railway,* 133 N. C., 610, approves *Symes' case, Neal's case, Lea's case* and *Bessent's case,* and the Court, in commenting upon them with reference to the facts of the case then under consideration, says: "If the defendant was negligent in not giving a signal sound, the act of the plaintiff was much greater carelessness and was the immediate cause of the injury, and he cannot be excused for such disregard of his personal safety. * * * If the plaintiff's intestate was walking upon the defendant's road in open daylight, on a straight piece of road, where he could have seen the defendant's train for one hundred and fifty yards, and was run over and injured, he was guilty of negligence. And, although the defendant may also have been guilty of negligence in running its train at a greater rate of speed than was allowed by the town ordinance, or in not ringing its bell as required by said ordinance, and in not keeping a lookout by its engineer, as it should have done, yet the injury would be attributed to the negligence of the plaintiff's intestate," quoting the last part of the extract we have taken from the case, *Neal v. Railway, supra.*

Perhaps no court has expressed itself in more certain and unmistakable terms upon this subject than this one, and with

more unanimity. The principle has been often announced, and applied to facts not essentially different from those in this case, that where a person on the track as a trespasser is apparently in possession of his senses and faculties, so that he can either hear or see the approach of a train, he must listen, and if he cannot hear he must look, for the approach of trains, and his failure to do so is negligence on his part, which at least concurs, up to the very time of the injury, with that of the defendant, the railway company, if there be any negligence on its part, and he must be considered in law and, we add, by every rule of justice, common fairness and common sense, to have brought disaster upon himself, if he is injured and killed. The rule, as stated in our decisions, and we restate and approve it now, is not one peculiar to this Court. It has been generally, if not universally, adopted by all the courts, and is thus epitomized in 3 Elliott on Railroads, sec. 1257a: "The company's employees may presume that one who is apparently able to do so will get off the track in time to avoid injury to himself."

We see nothing of a special nature in this record to except this case from the operation of the rule of law which has been so repeatedly applied to cases of its kind. Indeed, if anything, it is one that calls for a strict adherence to that rule. Here the engineer gave the signals at the crossings and also the danger signal, and apparently did everything that a cautious and prudent man would do under the circumstances. He perhaps did more than was required of him, so far as any duty was owing by the company to the intestate. *Morrow v. Railway,* 147 N. C., 623. The intestate, notwithstanding the engine was exhausting steam, on a track close by him, even if that deafened him so that he could not hear the train as it approached, had the sense of sight left, which was just as available to him in averting injury to himself, if he had exercised the least degree of care, as the sense of hearing would have been if there had been no noise. His own negligence

caused his death, and not that of the engineer. The use of his sense of sight would have saved him, and the engineer had the right to presume, even up to the last moment (as *Justice Avery* says in the cases we have cited), when his efforts to stop his train in time to save him proved unavailing, that he had made use of it and would clear the track before the train reached him. *Crenshaw v. Railway,* 144 N. C., 314. The plaintiff certainly has no better ground for asking a recovery than Mrs. Crenshaw had in the case just cited. There was some evidence that trespassers on the track often waited until a train was very near them before stepping off the track.

We entertain no doubt that, upon principle and authority, in any view we can reasonably take of the evidence, the plaintiff has wholly failed to show any actionable negligence on the part of the defendant, but he has shown such negligence of his intestate as clearly bars his recovery. We have discussed the question involved at much length, as counsel for the plaintiff earnestly and seriously challenged the application of the settled principle of law to this case.

The court should have sustained the motion to nonsuit and have dismissed the action.

Reversed.