(696) The action was brought to recover damages for the negligent killing of the deceased by the defendant's train, which, it is alleged, was running between Parkersburg and Garland, on the night of 12 September, 1913. He had attended a revival at Garland that night and went home from there in company with Lula Lamb. They walked on the railroad track from Garland towards Parkersburg about 2 1/2 miles and then turned from the track to the east and walked to her home, where they arrived between 11 and 12 o'clock. They met a train, which was going south, on their way, about the time they left Garland. He *Page 785 
left Lula Lamb's house for his own home across the railroad track about 12 o'clock the same night. He lived three-quarters of a mile from her home. He was found the next morning lying on the bottom of a ditch by the side of the railroad and between two railroad crossings, one of which was 100 yards from the place he was found and the other about a quarter of a mile distant. The distance from the track to the place where he was lying was about 12 feet, and his hat was on the railroad track, or at the end of the ties about seven steps from him, towards Wilmington. It had rust on it or something which was brown and had the appearance of rust. He was hurt when found, and while he was conscious, he was helpless and dazed and could not tell how he was hurt. He had been struck on the shoulders and later died of the wound. His coat looked as though something had caught it, and it was torn. When the doctor suggested that some one might have knocked him down to rob him, he said that he had a quarter in his pocket, which was found there. There was further evidence that two trains passed that point during the night, one at about 11:25 and the other some time later, about 3 o'clock, and that one of the trains had no headlight and gave no signal by bell or whistle for crossings. There was other evidence that the train had a headlight, but not an electric headlight. The track is straight from Garland to Parkersburg, and was used by pedestrians habitually. The court submitted four issues, and the jury found that the injury was caused by the defendant's negligence, to which the deceased had contributed by his own negligence; did not answer the third issue, as to the last clear chance, and assessed damages at $650. The court charged the jury that if defendant had no electric headlight on its engine, and that was the proximate cause of the injury to deceased, they would answer the first issue "Yes," and that there was no evidence that Henderson Treadwell was lying helpless on the track when he was struck or that he was otherwise unable to care for himself; that if he went on the track and probably did not exercise ordinary care in looking out and listening for trains, they would answer the second issue "Yes," and that there was no evidence that defendant had discovered Treadwell on the track in a helpless condition, and if he was walking on the track, and they saw him, the engineer had the right to suppose that he would leave the track before the train reached him, and he was not, in such circumstances, (697) required to ring the bell or give him other signal. Judgment was entered for defendant on the verdict, and plaintiff, after properly reserving exceptions, has appealed to this Court.
After stating the case: We have so recently and with so much amplitude discussed the principles of law relating to trespassers and licensees on railroad tracks, and applied them in so many different ways, it would seem that the subject had been well-nigh exhausted, and the rules pertinent to such cases had been finally and firmly settled. We shall not, therefore, "thresh this old straw" again, but content ourselves with a reference, though not a literal one, to two decisions of this Court where the doctrine has been traced from its origin through a long line of cases to the present time. Abernathy v. Railroad Co., 164 N.C. 91; Ward v. Railroad Co.,167 N.C. 148. A court of the highest authority has said that where it is known, as it should be, that a railroad company's right of way is being constantly used for its trains, and is at all times liable to be used for their running and operation in transporting freight and passengers, as a public carrier, under the highest legal obligation to serve the public diligently and faithfully as such, "the track, itself, as it seems necessary to repeat with decided emphasis, is itself a warning. It is a place of danger, and a signal to all on it to look out for trains, and it can never be assumed that they are not coming on a track at a particular time when it is being used for the convenience of trespassers or licensees, and, therefore, that there can be no risk to a pedestrian from them."
In the cases above cited this Court held, as it did also in Beach v.Railroad Co., 148 N.C. 153, that a railroad track is intended for the running and operation of trains, and not for a walkway, and the company owning the track has the right, unless the statute has in some way restricted that right, to the full and unimpeded use of it. The public have rights as well as the individual, and usually, and reasonably, the former are considered superior to the latter. That private convenience must yield to the public good and public accommodation is an ancient maxim of the law. If we should for a moment listen with favor to the argument, and eventually establish the principle, that an engineer must stop or even slacken his speed until it may suit the convenience of a trespasser on the track to get off, the operation of railroads would be seriously retarded, if not made practically impossible, and the injury to the public would be incalculable.
(698) The prior right to the use of the track is in the railway, especially as between it and a trespasser who is apparently in possession of his senses and easily able to step off the track. He has the advantage of the company's train, and besides is using its property gratuitously for his own pleasure and convenience, and if he has implied license to do so, it must be considered as held, and the privilege must be exercised, subject strictly to the company's right to use its tracks for running its trains. If the engineers must stop their trains to *Page 787 
await the pleasure or convenience of foot passengers in leaving tracks, when they can step off so easily and avoid injury and not obstruct or retard the passage of trains, the company cannot well perform its public duty as a carrier, and the public convenience, though superior and of prior right, must give way to private interests, contrary to the just maxim of the law. The railroad track itself was a warning of danger, made imminent by the approaching train. It was then his duty to keep his "wits" about him and to use them for his own safety. He knew, or ought to have known, that he was a trespasser, and it was his duty to have gotten out of the way of the train. The defendant was under no obligation to stop its train at the sight of a man on its track. It was apparent to the engineer, in those cases, that the plaintiff was in full possession of his faculties and could take care of himself, and the engineer had the right to presume that he would leave the track in time to avoid the injury. That he did not do so was his own fault, and he should suffer the consequences of his folly.
The doctrine of the cases already cited and decided in this Court has been firmly established in other jurisdictions, and notably in R. R. v.Houston, 95 U.S. 697, where it is said that a person using the track of a railroad company must look and listen, and any failure to do so will deprive him of all right to recover for any injury caused thereby. A party cannot walk carelessly into a place of danger, said the Court in that case, and if he does and is injured, he has himself alone to blame for the result. The cases in our courts also hold that neither the fact of an engine being on the south siding and exhausting steam, nor the speed of the oncoming train, which was not, in this case, at all excessive, can make any difference. Syme, McAdoo, and High cases, and R. R. v. Houston, supra. And many cases are they arrayed to show how well established is this principle. It is no new one, for as far back as McAdoo v. Railroad Co., 105 N.C. 140, it was held that when a person is about to use the track of a railroad, even at a regular crossing, it is his duty to examine and see that no train is approaching before venturing upon it, and he is negligent when he can, by looking along the track, see a moving train, which in his attempt to blindly pass across the road injures him. Even where it is conceded that one is not a trespasser, as in that case, in using the track as a footway from a foundry to his house, (699) it behooves him to be still more watchful. The license to use does not carry with it the right to obstruct the road and impede the passage of trains. A railroad company has the right to the use of its track, and its servants are justified in assuming that a human being who has the possession of all his senses will step off the track before a train reaches him, citing Wharton on Negligence, sec. 389, a; 2 Wood on Railroads, sec. 320, 333; Bullock v. Railroad, 105 N.C. 180; *Page 788 Parker v. Railroad Co., 86 N.C. 221. It was strictly applied, in High v.Railroad Co., 112 N.C. 385, to a state of facts by which it appeared that the pedestrian may not actually have seen the approaching train, for it was said that if she had looked and listened for approaching trains, as a person using a track for a footway should, in the exercise of ordinary care, always do, she would have seen that the train, contrary to the usual custom, was moving on the siding, instead of the main track. The fact that it was a windy day and that she was wearing a long poke-bonnet, or that the train was late, gave her no greater privilege than she would otherwise have enjoyed as license; but, on the contrary, should have made her more watchful. There was nothing in the conduct or condition of the plaintiff that imposed upon the engineer, in determining what course he should pursue, the duty of departing from the usual rule that the servant of a company is warranted in expecting that trespassers or licensees, apparently sound in mind and body and in control of their senses, will leave the track, and he may act upon this assumption until it is too late to prevent a collision, citing Meredith v. R. R., 108 N.C. 616; Norwood v. R. R.,111 N.C. 236; and those cases fully sustain the correctness of the proposition.
More recently, Justice Hoke said, in Talley v. Railroad Co.,163 N.C. 567, citing Beach v. Railroad Co., 148 N.C. 153, and Exum v.Railroad Co., 154 N.C. 408: "We have held in many well considered cases that the engineer of a moving train who sees, on the track ahead, a pedestrian who is alive and in the apparent possession of his strength and faculties, the engineer not having information to the contrary, is not required to stop his train or even slacken its speed because of such person's presence on the track. Under the conditions suggested, the engineer may act on the assumption that the pedestrian will use his faculties for his own protection and will leave the track in time to save himself from injury."
It is almost incredible that persons will take so many chances and incur so great risk under such dangerous circumstances. We could not listen to the excuse that the trespasser or licensee did not expect a train to come, at the very moment when it did, and therefore used the track incautiously or without a proper regard for his own safety, for (700) this would impede the carrier in the discharge of his duty to the public, for the proper performance of which the law holds him to a very strict accountability. There are regular and extra trains necessarily, and schedules are not made for him. As between the two — carrier and trespasser — the law looks with favor on the former, as being justified in acting upon appearances when the engineer sees a person ahead on the track, and further, as, at the time, representing the public interest, to which the private convenience of the pedestrian, whether *Page 789 
trespasser or licensee, must yield. If he is on the right of way at a place made dangerous by the approach of a train, or with the knowledge that a train may come towards him at any time, he must look out for his own safety, unless he is helpless or unable to do so, and this reasonably appears to the engineer; and his failure to take the needful precaution will deprive him of all remedy, if he is hurt by this want of care, and he will not be heard to say that he did not know he would be hurt, the very fact that he is in the way of the train, which has the preferred claim to the use of the right of way, being notice to him. He must look and listen, and take no chances, and, especially, if he knows that the train is approaching, must he get out of its way and let it pass. If the train is proceeding on the track, at any speed not forbidden by law, it is rightfully there and within the protection of the law, the company being a servant of the public, and as such in the rightful discharge of its duty.
Applying these principles to the facts in hand, we find that the learned judge did not explain to the jury very fully their bearing upon the issues. If the deceased could see the train, as it approached him, if he was on the track, it was his duty to get off and let it go by. If he was a licensee, using the track for his own purposes by mere sufferance, he should have been cautious, nevertheless, and kept constantly in the exercise of ordinary care, such as that of a prudent man. He should have carefully looked and listened for the train, whether it had a headlight or not, or was or not giving any signal of its approach, for if, notwithstanding the absence of these, he could have seen or heard the train, if he had been ordinarily careful and had looked and listened, it was his plain duty to take notice of its coming and have left the track, if he was thereon, or so near thereto that he was in danger of receiving injury as it passed by.
The headlight and signals are intended as a warning, but if the train can as well be seen or heard without them, there is no reason why that, of itself, is not sufficient notice of the immediate danger. But as we held inMorrow v. Railroad Co., 147 N.C. 623, while a pedestrian, not on a crossing, but between crossings, is not in law entitled to crossing signals, as the company owes no such duty to him, yet if an engine is being run without a headlight, and without giving crossing signals, this is some evidence, for the jury, that the train it is drawing was (701) being at the time negligently operated.
1. If deceased was asleep on the track, or otherwise helpless, he was negligent, but it was the duty of the defendant's engineer, after discovering his dangerous position, to have exercised ordinary care in saving him from harm, and it was further his duty, under our decisions, to keep a reasonably careful lookout so as to discern any person who may be on the track in a helpless condition. Arrowood v. Railroad Co., 126 N.C. 629; *Page 790 Gray v. Railroad Co., 167 N.C. 433; Cullifer v. Railroad Co., 168 N.C. at p. 311.
2. If deceased was walking or standing on the track, or so near to it as to be struck by it while passing, and he appeared to be in possession of his ordinary faculties, or to be able to care for himself and get out of the way, the engineer had a right to assume that he would do so, even up to the last moment, when it was too late to save him.
3. Whether there was a headlight or signals, and whether deceased could see or hear the train with or without them, are questions for the jury. If he could see or hear the train, and did not leave the track, his injury would be attributed to his own fault, and not to that of the defendant.
4. If the train was running without headlight or signals, this was some evidence of negligence, and might support a verdict, unless deceased actually saw or heard, or by the exercise of ordinary care for his safety he could have seen or heard the train. This happened to be a bright moonlight night, and the train was running on a straight track for a long distance.
5. The negligence of defendant, if any, in failing to discern the deceased, if he was lying helpless on the track, by the exercise of ordinary care, would not have justified an affirmative answer to the first issue, unless the negligence was the proximate cause of the injury. McNeillv. Railroad Co., 167 N.C. 390. And the same is true conversely as to the second issue, as the contributory negligence of plaintiff must have proximately caused the injury. McCall v. Railroad Co., 129 N.C. 298. "It is not the absence of a headlight, nor the impact of the train, which determines liability, but the impact of the train brought about by or as the proximate result of the absence of a headlight." McNeill's case, supra. And this is true also as to the absence of signals at the crossings. Negligence, by itself, is dormant and harmless, and only becomes active and injurious when it is the efficient cause of a wrong. The two must be coupled together before the negligence becomes a cause of action or defeats one.
The court did not apply these principles correctly to the facts of the case as they were disclosed by the evidence and were relevant to (702) the issues, and he told the jury that the plaintiff's negligence, of itself, and apart from its being the proximate cause of the injury to him, would authorize an affirmative answer to the second issue. This was error.
We will add that if the deceased was not on the track and only near it, but not so near that the engineer, if provided with a proper headlight, and in the exercise of proper care as to the outlook, could have told that he was in danger, the defendant would not be liable; but this follows *Page 791 
from what we have already said, as the question, at last, is one of negligence, that is, the absence of ordinary care, or that degree of care which the particular circumstances called for. The deceased does not appear to have been drinking at the revival, and it would have been a little unusual if he had been, nor does it clearly appear that he was on the track at all, or, if there, how he happened to be there. He had left his companion's home just three hours before and had only three-quarters of a mile to walk before reaching his home. The evidence lacks fullness and accuracy, and is somewhat confusing and unsatisfactory, as we view it, but perhaps it will be clarified at the next hearing, with a decided trend to one side or the other, and if it is not, the jury must solve the mystery, with the burden on the plaintiff to show them by a clear preponderance of the evidence what the facts are and that they constitute negligence that caused the injury. If he succeeds in doing so, the burden as to the other issue, contributory negligence, will be upon the defendant to establish it by the same quantum of proof.
As there was substantial error, a new trial, as to all the issues, is ordered.
New trial.
Cited: Davis v. R. R., 170 N.C. 587; Horne v. R. R., 170 N.C. 656,657; Lassiter v. R. R., 171 N.C. 286; Hollifield v. Telephone Co.,172 N.C. 725; McMillan v. R. R., 172 N.C. 855; Smith v. Electric R. R.,173 N.C. 492; Perry v. R. R., 180 N.C. 311; Kimbrough v. R. R.,182 N.C. 247; Harrison v. R. R., 204 N.C. 720; Mercer v. Powell,218 N.C. 651; Boone v. R. R., 240 N.C. 157.